# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ISAIAH COFFEY and RON JAEGER, on behalf of themselves individually and all others similarly situated, | Case No. 20-CV-2237 (NEB/TNL) |
| Plaintiffs, | ORDER ON MOTION FOR PRELIMINARY |
| v. | CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF |
| LON THIELE, in his official capacity as Steele County Sheriff, | CLASS ACTION SETTLEMENT |
| Defendant. | |

This matter came before the Court on a Joint Motion for Preliminary Class Certification and Preliminary Approval of Proposed Class Action Settlement. (ECF No. 31.) Plaintiffs Isaiah Coffey and Ron Jaeger sued Lon Thiele in his official capacity as Steele County Sheriff on behalf of a putative class in the above-captioned litigation.[1] The Parties have agreed on a putative class settlement and now seek preliminary class certification as well as preliminary approval of the Settlement Agreement dated

---

[1] At the hearing on the joint motion, the Sheriff's counsel explained that she also represents Steele County and that the Sheriff's and the County's interests are aligned in this matter. The Court thus refers to the Sheriff and Steele County together as "the County."

October 12, 2012, and its attached exhibits.[2] (ECF No. 34 ("Settlement Agreement").) For the reasons below, the Court grants the motion.

## BACKGROUND

### I.    The Complaint Allegations

Coffey and Jaeger brought this Complaint individually and on behalf of similarly situated individuals who were assessed confinement fees under a Steele County policy. (ECF No. 1-1 ("Compl.") ¶¶ 11–12, 15.) They allege that the County failed to properly consider the statutorily required criteria before charging inmates confinement fees. (*Id.* ¶¶ 7–8, 12–14, 19.) The Complaint alleges claims arising under the United States and Minnesota Constitutions and Minnesota statute.[3] (*Id.* ¶¶ 26–46.)

### A. *Minnesota Statute Section 641.12*

Minnesota Statute Section 641.12 authorizes counties to charge a person convicted of a crime and confined in the county jail the cost of their "room, board, clothing, medical, dental, and other correctional services." Minn. Stat. § 641.12, subdiv. 3(a). Counties may also assess confinement fees for any time for which the person received credit for time

---

[2] Capitalized terms used but not otherwise defined will have the meanings ascribed to them in the Settlement Agreement.

[3] At the hearing on the joint motion, counsel acknowledged that Count III of the Complaint incorrectly cites Minnesota Statute Section 641.14, which addresses separation of prisoners in jails. (Compl. ¶ 37.) Elsewhere in the Complaint, (*e.g., id.* ¶¶ 7–8), and in the memorandum supporting the joint motion, the Parties cite Minnesota Statute Section 641.12, which addresses collection of confinement fees. (*E.g.,* ECF No. 33 at 1.)

served against the sentence imposed for a conviction. *Id.* Counties may "use any available civil means of debt collection" in collecting the fees. *Id.* Section 641.12, subdivision 3(b) provides that counties "shall waive payment of the costs" if the sheriff or the chief executive officer of the local correctional agency "determines that the person does not have the ability to pay the costs, payment of the costs would create undue hardship for the person or the person's immediate family, the prospects for payment are poor, or there are extenuating circumstances justifying waiver of the costs." *Id.*, subdiv. 3(b).

### B. Confinement Fees Charged to the Named Plaintiffs

The Parties' memorandum explains that Coffey and Jaeger were incarcerated at the Steele County Detention Center ("SCDC") from 2016 to 2018 for pretrial and post-conviction detention. (ECF No. 33 at 2.) Steele County charges inmates a confinement fee of $25.00 per day. (Compl. ¶ 10.)

Coffey was held at SCDC until he was convicted and sentenced. (ECF No. 33 at 2.) When Coffey was transferred from SCDC to another facility, he received an invoice for $5,396.96 and SCDC withheld $603.04 from his jail account. (*Id.* at 2–3.) The County has since refunded Coffey $603.04, waived the fees, and canceled the revenue recapture process with the Minnesota Department of Revenue. (*Id.* at 3; Settlement Agreement ¶ 24.)

Jaeger was held at SCDC until he was convicted and transferred to another facility. (ECF No. 33 at 2.) The County prepared an invoice for Jaeger's confinement fees but took

no action and canceled the invoice. (*Id.*) As such, the Parties stipulated to dismissing Jaeger's claims with prejudice. (ECF No. 43; *see* ECF No. 47 (order dismissing Jaeger from this suit).)

## II.    The Settlement Agreement

After the Parties exchanged initial disclosures, written discovery, and produced documents, they reached a settlement agreement in July 2021. (Settlement Agreement at 2.) The Steele County Board approved the material terms of the preliminary settlement agreement on July 27. (*Id.*)

*Policy changes.* The Settlement Agreement provides that Steele County will "change its Pay-for-Stay policy to more clearly comply" with Section 641.12, subdivision 3(b). (*Id.* ¶ 4.) The policy will require the County: (1) to determine whether inmates are eligible for a waiver by inquiring about inmates' ability to pay when presented with confinement fee invoices; and (2) to communicate to inmates when invoiced (a) that the law requires a waiver if they cannot pay, (b) that they may request a waiver, and (c) the procedure for requesting a waiver.[4] (*Id.*; *see id.*, ¶ 5; *id.*, Ex. 1 (financial declaration to be completed by inmates).

*Retroactive consideration of fee waiver.* The County also agrees to conduct a retroactive determination of eligibility for a waiver of confinement fees under

---

[4] At the hearing on the joint motion, the County's counsel represented that the County has already implemented this policy using the financial declaration at Exhibit 1 of the Settlement Agreement.

4

Section 641.12, subdivision 3(b), for certain former inmates who owe outstanding fees, and/or from whom the County withheld jail account funds or otherwise collected payment. (Settlement Agreement ¶ 6.) The Parties propose certifying the following class for the purposes of settlement:

> Former Steele County Detention Center inmates who owe outstanding confinement fees and/or from whom the County withheld jail account funds or otherwise collected payment from the individual or revenue recapture who were invoiced September 18, 2014—July 13, 2021.

(*Id.* ¶ 7; *see id.* ¶ 8 (listing grounds for exclusion from class); ECF No. 39 (list of presumed class members in Exhibit 2 to the Settlement Agreement).) The Parties agree that waiver request forms will be sent to the presumed class members with a request that they return the completed forms to the County by March 1, 2022. (Settlement Agreement ¶ 8; *see id.*, Ex. 3 (waiver request form).) The County will review the completed forms using the factors set forth in Section 641.12, subdivision 3(b), to determine eligibility for waiver of confinement fees. (*Id.* ¶ 9.) If a class member is eligible for a waiver, the County will waive any outstanding balance, return any funds withheld or collected to the class member, and cancel any collection efforts.[5] (*Id.* ¶¶ 6, 10 (a)–(b).) Class members who respond and are not eligible for a waiver will be notified that their requests were denied. (*Id.* ¶ 10(c).) Class members who do not respond will be found ineligible for the waiver and the County will

---

[5] The Settlement Agreement also provides that amounts of fees refunded to waiver-eligible class members will vary and that where the County did not collect fees from waiver-eligible class members, it will cancel collection efforts with no compensation paid to those individuals. (Settlement Agreement ¶ 24.)

take no further action until after March 1, 2022.[6] (*Id.* ¶ 10(d).) The County will consider the untimely submission of a waiver request of a class member who "does not timely respond to class notification and later seeks a waiver after [March 1, 2022]." (*Id.*)

*Release.* Upon the Court's entry of a final order and judgment approving settlement, class members agree to dismiss the claims with prejudice and provide with a full, general release of claims against the Sheriff, Steele County, and related parties.[7] (*Id.* ¶¶ 2–3, 26, 34.)

## ANALYSIS

The Parties' joint motion asks that the Court: (1) appoint the Legal Assistance to Minnesota Prisoners ("LAMP") Clinic as Class Counsel; (2) preliminarily approve the Parties' proposed settlement in the Settlement Agreement; and (3) preliminarily certify the settlement class and name Isaiah Coffey as Class Representative.

---

[6] Paragraph 10(d) of the Settlement Agreement repeatedly references "after the class period." At the hearing on the joint motion, counsel explained that "the class period" in paragraph 10(d) does not mean the period of time identified in the class definition, which has passed. Rather, "the class period" refers to the period in which class members are to return their completed waiver request forms, *i.e.*, by March 1, 2022.

[7] The Settlement Agreement also provides that "any dispute shall be presented to the Magistrate Judge for this case for final distribution" and that "[t]he Magistrate Judge shall be expected to implement this Settlement Agreement in accordance with its material terms." (Settlement Agreement ¶ 30.) At the hearing, the Parties' counsel confirmed that the Magistrate Judge's responsibility under this provision ends with this Court's preliminary approval of the Settlement Agreement. The Magistrate Judge has no role in the administration of the settlement.

## I.     Class Counsel

The Court first addresses the Parties' request to appoint the LAMP Clinic as Class Counsel. (ECF No. 31.) The Court may appoint an applicant as class counsel only if the applicant is adequate under Rule 23(g)(1) of the Federal Rules of Civil Procedure and "fairly and adequately represent[s] the interests of the class." Fed. R. Civ. P. 23(g)(2), (4). Rule 23(g)(1) provides that the Court "must consider":

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)  counsel's knowledge of the applicable law; and

(iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The LAMP Clinic represents the named plaintiffs and brought the action against the Defendant. (ECF No. 1-1.) The LAMP Clinic has "30 years of experience representing underserved individuals, particularly prisoners, in vindicating their statutory and constitutional rights." (ECF No. 33 at 13; *see* ECF No. 45 ¶ 5 (explaining that LAMP represents incarcerated people with civil legal issues); *see generally* Mitchell Hamline School of Law, *LAMP: Legal Assistance to Minnesota Prisoners*, https://mitchellhamline.edu/clinics/lamp-legal-assistance-to-minnesota-prisoners/ (last visited Nov. 20, 2021) ("The LAMP clinic provides help with all types of legal matters to inmates."). Mitchell Hamline Law Professor Bradford Colbert directs the LAMP Clinic and supervises the certified student attorneys involved in this action. *See* D. Minn. LR

83.8 (authorizing law student practice with supervision). Attorney Colbert attests that he has represented hundreds of clients in Section 1983 lawsuits, including the plaintiff in *Christianson v. Markquart*, No. 16-CV-1034 (JRT/KMM) (D. Minn.). (ECF No. 45 ¶ 7.) In *Christianson*, the court considered the same confinement fee statute, found that the Martin County Sheriff had violated Section 641.12, subd. 3(b), and thus granted summary judgment in the plaintiff's favor. (ECF No. 45 ¶¶ 7–8 (citing *Christianson*, 2018 WL 461134 (D. Minn. Jan. 17, 2018).)

The Court finds that the LAMP Clinic has a great deal of experience in prisoner litigation and can fairly and adequately represent the interests of the settlement class. The Court thus appoints the LAMP Clinic as Class Counsel.

## II.    Preliminary Approval of Class Settlement

Under Rule 23(e), the court approves the settlement of a class action "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The review of a proposed class action settlement involves two stages. At the first stage, the parties submit the proposed settlement to the court, which makes "a preliminary fairness evaluation." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (citations omitted). If the court finds the proposed settlement to be preliminarily acceptable, it directs the parties to provide notice to the class members of a fairness hearing at which they may be heard on, object to, and opt out of the settlement, and the settling parties may be heard with respect to final court approval. *Id.* (citing Fed. R. Civ.

P. 23(c)(3), (e)(1), (e)(5)). "At the preliminary-approval stage, the fair, reasonable, and adequate standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Id.* (quotation marks and citation omitted); *see Phillips v. Caliber Home Loans, Inc.*, No. 19-CV-2711 (WMW/LIB), 2021 WL 3030648, at *5 (D. Minn. July 19, 2021) ("Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, . . . preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval.") (citation omitted).

To determine whether preliminary approval of a class settlement is appropriate, a court considers whether it will "likely be able to: (1) approve the proposal under Rule 23(e)(2); and (2) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). If these elements are satisfied, the court then considers whether the parties' proposed method of notice satisfies the requirements of Rule 23(c)(2)(B). *Swinton v. SquareTrade, Inc.*, No. 18-CV-144 (SMR/SBJ), 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019); *see* Fed. R. Civ. P. 23(c)(2) advisory committee's notes to 2018 amendment (recognizing the propriety of sending notice to the class simultaneously under both Rules 23(e)(1) and 23(c)(2)(B)).

### A. Rule 23(e)(2) Requirements

When parties to a class action propose settlement that would bind class members, they must show that the settlement is "fair, reasonable, and adequate." Fed. R. Civ.

P. 23(e)(2). The court must consider whether: (1) "class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," taking certain considerations into account; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). The Eighth Circuit sets forth a similar multi-factor test to determine the fairness and adequacy of a proposed settlement. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015); *Swinton*, 2019 WL 617791, at *5. For the reasons below, the Court finds that the proposed settlement is likely to satisfy these requirements.

*Adequate representation.* The Court is persuaded that Coffey and Class Counsel have adequately represented the proposed settlement class. The Court is unaware of a conflict of interest or anything else that would render Coffey's representation of the proposed settlement class deficient. For the reasons above, the Court finds that Class Counsel is qualified, experienced, and able to conduct the litigation. So the first factor supports approving the proposed settlement on a preliminary basis.

*Arm's length negotiation.* The Court finds that the proposed settlement resulted from arm's length negotiation by their respective counsels after a settlement conference before the Magistrate Judge. (ECF No. 28.) The parties appear to have entered into the settlement in good faith.

*Adequate relief.* Rule 23(e)(2)(C) instructs the Court to consider the following to determine whether the proposal provides adequate relief:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and]
> (iii) the terms of any proposed award of attorney's fees, including timing of payment.

Fed. R. Civ. P. 23(e)(2)(C). At the hearing, Class Counsel explained that settling now avoids litigation costs and risks, including litigating a statute of limitations defense raised by the County. Its clients sought refunds of their confinement fees and for collection efforts to end, which are part of the proposed settlement. At this early stage of the litigation, the County was willing to change its procedures and avoid the cost of litigating outstanding issues. *See generally Christianson*, 2018 WL 461134, at *5 (granting summary judgment for plaintiff where the Martin County Sheriff never determined whether plaintiff was entitled to a confinement fee waiver, thereby violating § 641.12, subd. 3(b), and ordering the sheriff to create procedures to carry out his statutory duty). The Court thus finds that proceeding to trial would lead to needless litigation costs and risk and delay the distribution of relief to proposed class members.

The Settlement Agreement appears to provide class members with an effective method to apply for a waiver of confinement fees charged by the County, to be reimbursed for fees paid, and to have the County's collection efforts cancelled. The parties have agreed that Class Counsel will receive $27,500 for attorney's fees and costs.

(Settlement Agreement ¶¶ 24, 28.) Amounts refunded to eligible class members and Class Counsel's attorneys' fees will be paid out of the County's general fund, which is funded through the power of taxation.[8] (*Id.* ¶ 24.) Thus, Class Counsel's fees and expenses would not be deducted from a finite settlement fund and would not reduce an award to the proposed settlement class members. The Court finds nothing problematic with the timing of payment because Class Counsel agrees to seek attorneys' fees when it seeks final approval of the Settlement Agreement. (*Id.* ¶ 28.) For these reasons, the Court finds that the proposed settlement provides adequate relief to the proposed class members. This factor therefore also favors approving the proposed settlement on a preliminary basis.

*Equitable treatment.* The Court finds that the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Agreement proposes that the County will refund confinement fees paid by class members who apply for and are eligible for a waiver of confinement fees. (Settlement Agreement ¶ 10(a).) Waiver-eligible class members who did not pay confinement fees will not receive a payment, as there is nothing to refund. (*Id.* ¶ 10(b).) In both instances, the County agrees to cancel its efforts to collect outstanding confinement fees. (*Id.* ¶¶ 10(a)–(b).) The Court finds that the proposed settlement provides relief commensurate to the value of the class members' respective claims. *Swinton*, 2019 WL 617791, at *8.

---

[8] At the hearing, the County's counsel represented that Class Counsel's attorneys' fees will be paid out of the County's general fund.

*Fair, adequate, and reasonable settlement*. The Court also finds the four factors that Eighth Circuit courts traditionally use to assess whether the settlement is fair, reasonable, and adequate are likely satisfied. *E.g.*, *Marshall*, 787 F.3d at 508. These are: (1) "the merits of the plaintiff's case weighed against the terms of the settlement"; (2) "the defendant's financial condition"; (3) "the complexity and expense of further litigation"; and (4) "the amount of opposition to the settlement." *Id.* (citations omitted); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). The Court finds that the merits of Coffey's case weighed against the terms of the proposed settlement and the complexity and expense of further litigation support approval. The factor of the County's financial condition is neutral. As noted above, the County's general fund is funded by the power of taxation, and there is no indication that the County is financially unable to pay the settlement or keep litigating this action. *See Marshall*, 787 F.3d at 512 (finding this factor neutral when the defendant was in good financial standing, and thus able to pay its settlement obligations or keep defending the litigation). As for the final factor, because the presumed class members have not yet received notice, it is premature to assess the amount of opposition to the settlement. *Fath v. Am. Honda Motor Co.*, No. 18-CV-1549 (NEB/LIB), 2019 WL 6799796, at *4 (D. Minn. Dec. 13, 2019). The Court finds that the Eighth Circuit factors support preliminary approval of the proposed settlement.

### B. Preliminary Certification of the Settlement Class

On a motion for preliminary approval, the parties must also show that the Court

"will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed.

R. Civ. P. 23(e)(1)(B)(ii). The Court must consider the class action prerequisites of

Rule 23(a) and, because the Parties seek to certify a class under Rule 23(b)(3), the

requirements of Rule 23(b)(3).

### 1. Rule 23(a): Class Action Prerequisites

Rule 23(a) has four prerequisites for a class action:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*Numerosity.* The Parties agree that nearly one thousand class members exist and

have identified them in Exhibit 2 to the Settlement Agreement. (ECF No. 33 at 9; ECF

Nos. 38 (filed under seal), 39 (redacted).) As such, the proposed class is so numerous that

joinder of all members is impracticable. *See, e.g., Ark. Educ. Ass'n v. Bd. of Educ.,* 446 F.2d

763, 765–66 (8th Cir. 1971) (concluding class of twenty satisfied numerosity requirement).

The class thus likely satisfies the numerosity prerequisite of Rule 23(a)(1).[9]

_____

[9] The Eighth Circuit also considers an "implicit requirement that a class 'must be
adequately defined and clearly ascertainable.'" *McKeage v. TMBC, LLC*, 847 F.3d 992, 998

*Commonality*. Rule 23(a)(2) requires questions common to the class showing "that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation omitted). Whether the County should have considered confinement fee waivers before invoicing the class members is a common question capable of class-wide resolution. (ECF No. 33 at 10–11.) For this reason, the class likely satisfies the commonality prerequisite.

*Typicality*. The typicality requirement of Rule 23(a)(3) "is fairly easily met so long as other class members have claims similar to the named plaintiff.'" *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018) (citation omitted). If the named plaintiff's claim arises from "the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory," factual variations in the individual claims will not normally preclude class certification. *Id.* Coffey's claims stem from the same alleged conduct of the County as the presumed class members' claims and rely on the same legal theories. The class likely satisfies the typicality prerequisite.

*Adequacy*. Under the adequacy inquiry of Rule 23(a)(4), courts consider whether the named plaintiffs "(1) have common interests with the members of the class; and (2) will vigorously prosecute the interests of the class through qualified counsel." *In re*

---

(8th Cir. 2017) (per curiam) (citation omitted). "A class may be ascertainable when its members may be identified by reference to objective criteria." *Id*. The class is likely ascertainable though the County's records, as the Parties have identified the presumed class members in Exhibit 2 to the Settlement Agreement.

*Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 613 (8th Cir. 2017) (cleaned up, citation omitted). Coffey has common interests with the class members, and the Court is unaware of any conflicts with them. The Parties move to appoint Coffey as Class Representative. Because Coffey is similarly situated to the class members and his interests are typical of the class, he can fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(3)–(4). The Court thus appoints Coffey as Class Representative.

Coffey retained the LAMP Clinic to prosecute the interests of this case. As discussed above, the Court finds the LAMP Clinic to be qualified and appoints it as Class Counsel. Thus, Coffey, as Class Representative, likely satisfies the adequacy requirements.

### 2. *Rule 23(b)(3)*

"Before certifying a class under Rule 23(b)(3), a district court must find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374 (8th Cir. 2018) (quoting Fed. R. Civ. P. 23(b)(3)). The Court finds that the class likely meets both the predominance and superiority requirements.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 374–75 (citation omitted). It is satisfied where "the common, aggregation-enabling, issues in the case are more prevalent

or important than the non-common, aggregation-defeating, individual issues." *Id.* at 375 (citation omitted). Even though each class member's eligibility for a fee waiver will be considered individually, the Court finds predominance is likely satisfied because the issue of whether the County should have determined the waiver of confinement fees for the class members likely predominates over other individual issues. (ECF No. 33 at 10–11.)

The superiority inquiry tests "whether the class action is the best available method for resolving the controversy." *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *6 (D. Neb. Sept. 27, 2016). Here, the small values of the individual class members' claims provide little incentive for any individual member to pursue his claim in federal court. (*See* ECF No. 39 (listing confinement fees charged to potential class members).) The Court is unaware of any other way that a member of the proposed settlement class might seek redress. In these circumstances, class action is likely the best method for resolving the controversy.

### C. Settlement Notice

For the reasons discussed above, the Court will likely approve the proposed settlement and certify the settlement class. The Court must therefore "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a class proposed to be certified for purposes of settlement under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable

under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state certain information in "plain, easily understood language." *Id.* The notice may be by United States mail, electronic means, or other appropriate means. *Id.*

The Settlement Agreement provides that a class administrator will mail notice to presumed class members by first class mail. (Settlement Agreement ¶ 14; *see id.*, Ex. 4 (mail notice).) The class administrator will also publish notice of preliminary class certification and proposed settlement in four Minnesota newspapers. (*Id.* ¶ 15; *see id.*, Ex. 5 (publication notice).) Potential class members may opt out of the settlement by submitting a request to do so to Class Counsel. (*Id.* ¶ 18–19; *see id.*, Ex. 6 (opt-out form).) Class members who do not opt out have the right to intervene, comment on, or object to the settlement and its terms. (*Id.* ¶ 21.) The Court finds that this notice plan is reasonable and satisfies the requirements of Rule 23(c)(2)(B).

The Court has also reviewed the proposed settlement notices attached to the Settlement Agreement as Exhibits 4 and 5 as well as the Opt-Out form attached as Exhibit 6. The notices clearly describe this action, potential class members' legal rights, the settlement terms, the opt-out procedure, and the waiver request procedure, and otherwise comply with the requirements of Rule 23(c)(2)(B).

Because the notice plan and notices are reasonable and constitute "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), the Court directs their use.

## CONCLUSION

Considering the Parties' joint motion and all the files and records herein, including the representations of counsel, the Court finds that the proposed settlement described in the Settlement Agreement, (ECF No. 34), is preliminarily approved as fair, reasonable, and adequate, free of collusion to the detriment of the class members, and within the range of possible final judicial approval.

THEREFORE, it is ORDERED that:

1. *Preliminary Class Certification.* The Parties have agreed, for purposes of settlement and its implementation, that the action may proceed as a class action in accordance with Rule 23(b)(3). The Court agrees and preliminarily certifies, for settlement purposes only, the following class under Rule 23:

> Former Steele County Detention Center inmates who owe outstanding confinement fees and/or from whom the County withheld jail account funds or otherwise collected payment from the individual or revenue recapture who were invoiced September 18, 2014–July 13, 2021.

The presumed class members are listed in Exhibit 2 to the Settlement Agreement. (ECF Nos. 38 (filed under seal), 39 (redacted).)

2. *Preliminary Approval of Proposed Settlement.* The settlement proposed in the Settlement Agreement and Exhibits thereto is preliminarily approved as fair, reasonable,

and adequate, free of collusion to the detriment of class members, and within the range of possible final judicial approval, subject to the terms of the Settlement Agreement. The Court finds that: (a) the proposed settlement resulted from arm's-length negotiations; and (b) the proposed settlement evidenced by the Settlement Agreement is sufficient to warrant notice thereof to class members as well as a full hearing on the proposed settlement.

3. *Settlement Purposes Only*. The preliminary certification of the settlement class and this litigation as a class action is for settlement purposes only and will be terminated and without further force or effect and without prejudice to either party in connection with any future proceedings in the litigation, including any future motion on class certification, if: (1) the Court fails to approve the Settlement Agreement as written or if on appeal the Court's approval is reversed or modified; or (2) the final approval order and judgment is not entered by the Court or is reversed or modified on appeal or otherwise fails for any reason.

4. *Appointment of Class Representative and Class Counsel*. For settlement purposes only, the Court appoints Plaintiff Isaiah Coffey as Class Representative, and his counsel, the LAMP Clinic, as Class Counsel. The Court finds that the Class Representative and his counsel have thus far adequately represented the interests of the Settlement Class.

5. *Mailing and Publishing of Settlement Notice.* The Court hereby approves the proposed form of settlement notice in the form submitted to the Court as Exhibit 4 to the

Settlement Agreement. (ECF No. 34-3.) Class Counsel shall cause the settlement notice, in a form attached to the Settlement Agreement as Exhibit 4, to be issued via direct mail to all class members listed in Exhibit 2 no later than December 20, 2021. Class Counsel shall also cause the publication notice to be published, in a form attached to the Settlement Agreement as Exhibit 5, no later than December 20, 2021, in the Star Tribune (local printing), St. Paul Pioneer Press (local printing), Steele County Times, and Owatonna People's Press. (ECF No. 34-4.) The Parties shall thereafter file with the Court proof, by affidavit, of the mailing and the publication of the publication notice as provided in this Order.

The Court finds that the notice pursuant to this paragraph (i.e., direct mail and publication) is the best notice practicable and is reasonably calculated under the circumstances to apprise the class members of their rights with respect to the proposed settlement. The Court further finds that such notice meets the requirements of Rule 23 and due process requirements of the State of Minnesota and United States Constitution because it constitutes due, adequate, and sufficient notice to all persons entitled to receive it. The Court recognizes that minor modifications may be made to these notices to provide precise dates for important deadlines following the issuance of this Order.

6. *Filing of Opt-Outs.* The Court approves the opt-out form attached to the Settlement Agreement as Exhibit 6. (ECF No. 34-5.) Individuals who are within the class as defined in this Order who do not wish to be bound by the terms of settlement in the Settlement

Agreement must complete, sign, and mail an opt-out form to Bradford Colbert, LAMP, Mitchell Hamline School of Law, 875 Summit Avenue, Room 254, St. Paul, MN 55105, postmarked with first class postage prepaid, no later than February 1, 2022. Opt-out forms not postmarked on or before the deadline will be rejected. Class members who do not opt-out will be bound by the terms of the Settlement Agreement and the Court's final order regarding the Settlement. Individuals who do opt-out will not be bound by the Settlement Agreement and will not participate in any distributions or benefits under the Settlement Agreement.

7. *Final Fairness Hearing.* A Final Fairness Hearing will be held before this Court at U.S. Courthouse, 300 South Fourth Street, Courtroom 13W, Minneapolis, Minnesota, on April 11, 2022, at 10:00 a.m. (or on such continued dates as the Court may direct without further notice to class members) to consider: (a) the fairness, reasonableness, and adequacy of the proposed settlement and the terms and provisions of the Settlement Agreement; (b) to determine whether the Settlement Agreement should be finally approved by the Court; and (c) such other matters as the Court may deem proper and necessary. Briefs supporting the final settlement approval shall be served and filed seven (7) days prior to the Final Fairness Hearing.

8. *Objections and Appearance at the Final Fairness Hearing.*

a.    Any class member may object to the fairness, reasonableness, or adequacy of the proposed settlement, attorneys' fees and expenses, or to the proposed incentive

payment to the Class Representative, if the settlement is approved at the Final Fairness Hearing.[10] Class members may do so either on their own or through an attorney hired at their own expense. Any class member who wishes to object to the proposed settlement, whether on their own or through an attorney, must file a written objection with the **U.S. District Court, Attn: Clerk of Court, 300 South Fourth Street, Minneapolis, MN 55415**. Any supporting materials, papers, or briefs the objector wishes the Court to consider shall accompany the written statement of objection filed with the Clerk of Court no later than March 28, 2022 (14 days prior to the hearing). Both the written objection and any supporting materials must also be mailed to both Class Counsel and the County's Counsel, postmarked, with U.S. postage prepaid, no later than March 28, 2022 (14 days prior to the hearing). Any objection not timely made in the manner provided herein shall be forever barred. Any attorney hired by a class member, at that class member's expense for the purpose of making objections, must file with the Clerk of Court and serve a notice of appearance no later than thirty (30) days after the Settlement Notice is mailed by delivery to the above-named Class Counsel.

b.     Any class member who timely files and serves a written objection in the manner provided above may also appear at the Final Fairness Hearing either in person or through counsel hired at the class member's expense to object to the fairness,

---

[10] The Settlement Agreement proposes that Coffey receive an incentive payment of $500 for serving as Class Representative. (Settlement Agreement ¶ 24.)

reasonableness, or adequacy of the proposed settlement or the application for attorneys' fees and expenses. Class members or their attorneys intending to appear at the Final Fairness Hearing must deliver to Class Counsel and Defendant's Counsel and file with the Court no later than March 28, 2022 (14 days prior to the hearing), a notice of intention to appear, setting forth: (i) the name and address of the class member and, if applicable, the name, address, and telephone number of the class member's attorney; (ii) the objection, including any papers in support thereof; and (iii) the name and address of any witness to be presented at the settlement hearing together with a statement about the matters on which he or she wishes to testify and a summary of the proposed testimony. Any class member who does not timely file and serve a notice of intention shall not be permitted to be heard at the Final Fairness Hearing except for good cause shown.

9. *Confidentiality of the Sealed Exhibit 2 to Settlement Agreement.* Exhibit 2 to the Settlement Agreement is a list of presumed class members that contains their addresses. The Parties determined that the address information is personal and private, and thus the County filed Exhibit 2 under seal at ECF No. 38 and filed a redacted version of Exhibit 2 at ECF No. 39. The class members' addresses are required to document and implement the Settlement Agreement. The Parties jointly moved to continue the sealing of ECF No. 38. (ECF No. 48.) The Court finds that unsealing this information would serve no public purpose and thus GRANTS the joint motion, (ECF No. 48), and directs that ECF No. 38 will remain under seal. Counsel for the Parties may disclose to any person identified in

Exhibit 2 the address information pertaining to that person but will not disclose such information to others.

10. *Role of the Magistrate Judge.* Despite the Settlement Agreement's provision that "[t]he Magistrate Judge shall be expected to implement this Settlement Agreement in accordance with its material terms," (Settlement Agreement ¶ 30), the Magistrate Judge will have no role in the administration of the settlement.

Dated: November 23, 2021                    BY THE COURT:

                                            s/Nancy E. Brasel
                                            Nancy E. Brasel
                                            United States District Judge